## THE A. J. WRIGHT.

## THE SPIEGEL.

## THE NEW YORK WORLD.

## THE ELIZABETH FARRELL.

## RELIANCE MARINE INS. CO. v. THE A. J. WRIGHT et al.

### (District Court, N. D. New York. February 12, 1898.)

**1. COLLISION IN ERIE CANAL—FAILURE TO REVERSE.**
   A wheelsman in charge of a steam canal boat, with a tow lashed in front, is in fault if, on perceiving the approach of another steam canal boat on the side where he himself is entitled to pass, he maintains his course and speed, and does not reverse until collision becomes inevitable.

**2. SAME.**
   A collision between the forward tows of steam canal boats, proceeding in opposite directions on the Erie Canal at night, *held*, on conflicting evidence, not to have been an inevitable accident, but to have resulted solely from the fault of the westward-bound vessel in not keeping closely to its own side of the channel.

This was a libel in rem by the Reliance Marine Insurance Company, insurer of cargo, against the steamer A. J. Wright and the canal boat Spiegel. The steamer New York World and the canal boat Elizabeth Farrell were subsequently brought into the cause by petition.

Laughlin, Ewell & Houpt and Wilber E. Houpt, for libelant.

Potter & Wright and William B. Wright, Jr., for the New York World and the Elizabeth Farrell.

Ingram & Mitchell and John W. Ingram, for the A. J. Wright and the Spiegel.

COXE, District Judge. On the evening of July 18, 1896, the steam canal boat New York World was proceeding eastwardly on the Erie Canal, pushing the canal boat Farrell and towing two other canal boats at the end of a long hawser. At the same time the steam canal boat A. J. Wright was proceeding westwardly, pushing the canal boat Spiegel and towing two other boats. The Spiegel and the Farrell were rigidly fastened in front of their respective steamers.

They collided where there is a bend in the canal at a point about a mile east of Phillip's Locks and 500 feet east of French's Bridge. The collision occurred about 10 o'clock. It was a clear starlight and moonlight night. The stem of the Spiegel struck the Farrell about three feet from her stem on the port knuckle. The Farrell sank to the bottom of the canal, and her cargo of oats was damaged. The cargo was abandoned to the libelant, the Reliance Marine Insurance Company, which had issued a policy thereon. The damage to the cargo was subsequently paid by the libelant, and this action was commenced against the Wright and Spiegel. The World and Farrell were subsequently brought in by petition. It appearing at the argument that the canal boats Spiegel and Farrell were free from fault, being wholly under the control of their respective steamers, the libel, as to them, was dismissed without costs.

It is not pretended that the collision was the result of inevitable accident. It is conceded on all sides that it was due to negligence on the part of either the World or the Wright, or of both combined. The canal at the point in question is about 80 feet wide at the top, and about 50 feet at the bottom. The navigable channel for loaded boats is, therefore, about 50 feet wide. The boats were 17 feet 10½ inches beam, so that in passing they would occupy the entire channel, except about 15 feet. At the point of collision the convex side of the bend is towards the north. On the towpath side the bank of the canal is shelving. On the berm or south side it is nearly perpendicular, there being a rocky bank 15 feet high extending along the bend. Loaded boats could navigate at a distance of 5 feet from the berm bank. On the towpath side it was impossible, owing to the greater slope, to get nearer than 10 or 12 feet to the bank. The moon was southwest of the canal, and consequently the berm side was in the shadow of the rocky bank. As soon as the boats became aware of each other's presence signals were interchanged, the fleets agreeing that they would keep to the right and pass port to port. There was a current of about a mile an hour running toward the east. The World had the current with her. The Wright was going west against the current. When it is realized that the steamers with their consorts made two boats each nearly 200 feet in length and nearly 18 feet wide, and that these boats were attempting to pass in a curving channel less than 60 feet wide, it will be seen what a slight deviation by either would cause disaster. If each hugged its respective side as closely as possible, there would be only about 15 feet of clear water between them. It will also be seen how impossible accuracy is in such circumstances, and how easily witnesses may be mistaken when the question turns upon the variation of a few feet, and when darkness and excitement combine to make clear and cool observation impossible. If this controversy were tried by a jury a disagreement would be very likely to result. There is absent from the case any controlling circumstance to aid the court in reaching a conclusion. Each counsel contends that his boat was on the proper side of the canal, that the other boat was on the wrong side, and that the theory of his adversary as to the position of the boats and the cause of the collision is impossible and

absurd. The testimony is contradictory and wholly irreconcilable, and yet, on a bright night, with no abnormal conditions existing, the Farrell was sunk in a canal where hundreds of just such boats were continually passing in safety. Some one was to blame for this, and the court, with no certain guide to the truth, is compelled to find who it was. As one of the witnesses expresses it: "There was absolutely no reason for this collision if the boats had attended to their business." The World insists that the collision occurred on the berm side of the canal, the Wright that it occurred on the towpath side. The theory of the former is that the World and Farrell were well over towards the rocks, and that when 50 feet away the Spiegel took a sheer and struck the Farrell as described. The theory of the latter is that the World and Farrell, after signaling for the berm side, came down on the towpath side and continued there until the collision. There are difficulties in maintaining either theory, but after reading the testimony, and some of the more important portions several times, the court is constrained to accept the theory advanced by the World as the more plausible, and the one sustained by the preponderance of testimony. The reasons for this conclusion are briefly as follows:

First. The weight of testimony is to the effect that the World and Farrell were on the berm side of the canal. There were only two men on the Wright and Spiegel who were in a position to judge of the course of the boats prior to the moment of collision, and one of these, Jewell, says that after the boats came in sight "the Farrell's steersman appeared to be keeping his boat where it belonged on the berm bank." On the other hand at least five witnesses, who were in a position to see, testify that the Farrell and World were on the proper side of the canal.

Second. The World was in the hands of a competent crew. No charge of incompetency, based on facts, can be brought against any of them. The wheelsman was a man of experience. Before entering the bend he had checked down and given the proper signal to keep to the right. The channel on the berm side was much better than on the towpath side. Every motive of prudence and convenience prompted him to what he had signaled he would do. That in such circumstances a careful pilot should hug the wrong side of the canal seems inexplicable. Not only was it safer, but it was more convenient, to do the right thing.

Third. The wheelsman who was alone in charge of the Wright was a man who had had very little previous experience with steam canal boats. On the same evening he had had a similar encounter with another east-bound fleet, barely escaping collision, and raking the Mississauga and her consorts during their entire length. If his own testimony is to be accepted, he was certainly negligent, for, seeing the World and Farrell coming down on the towpath side, he kept on at the same rate of speed, and did not reverse until a collision was inevitable. His history, his testimony and his actions on the night in question, all indicate that he would be more likely to make a mistake in navigation than the wheelsman of the World, who was acting under the immediate eye of his captain. The captain of the Wright had

retired for the night. In any view of the matter the Wright should have been reversed much sooner than she was.

Fourth. The character of the blow on the Farrell's port bow, about three feet from the stem, and the breaking of the port coupling, tend to corroborate the theory of the World that the Spiegel sheered over and struck the Farrell. If the wound on the starboard side was made, as the counsel for the World contends, by reason of the Farrell having been driven by the force of the impact against the rocks on the berm bank, it is almost conclusive evidence of the negligence of the Wright. There is, however, too much doubt on the subject to warrant a finding to this effect. Although the witnesses speak of the Spiegel's action as a "sheer," it should be remembered that a deviation of 10 or 15 feet was sufficient to cause the accident. A slight error in judgment on the part of the pilot of a craft nearly 200 feet in length might produce this deviation, which could hardly be called a "sheer," in the ordinary acceptation of that term.

The court has thus indicated the principal reasons which have led to the conclusion that the Wright was responsible for the accident. Other minor reasons might be stated but it is not necessary. This is not a case where both boats can be held liable. The question turns solely upon the location of the boats. If the World were where the weight of testimony places her—on the berm side—she was guilty of no fault contributing to the accident. On the other hand, if she were on the towpath side, where the Wright's wheelsman places her, she certainly would be primarily responsible for the collision. Upon this proof the court cannot place the boats in a position where both were negligent. The two theories are diametrically opposed. The court may accept either, but not both. There is no middle ground.

The libel against the Spiegel and Farrell is dismissed without costs. The libel against the New York World is dismissed. As the subject of costs has not been discussed, the question whether the World should recover costs, and if so from whom, may be reserved until the settlement of the decree. The libelant is entitled to a decree against the Wright, with costs, and a reference to compute the amount due.